### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF CONNECTICUT
### BRIDGEPORT DIVISION

| | |
|---|---|
| ERICA LAFFERTY; DAVID WHEELER; FRANCINE WHEELER; JACQUELINE BARDEN; MARK BARDEN; NICOLE HOCKLEY; IAN HOCKLEY; JENNIFER HENSEL; JEREMY RICHMAN; DONNA SOTO; CARLEE SOTO-PARISI; CARLOS M. SOTO; JILLIAN SOTO; AND WILLIAM ALDENBERG, | ) ) ) ) ) ) ) ) ) )    ADV. PROC. NO. 22 - 05004    May 12, 2022 |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| ALEX EMRIC JONES; INFOWARS, LLC; FREE SPEECH SYSTEMS, LLC; INFOWARS HEALTH, LLC; PRISON PLANET TV, LLC; WOLFGANG HALBIG; CORY T. SKLANKA; GENESIS COMMUNICATIONS NETWORK, INC.; and MIDAS RESOURCES, INC., | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

### DEBTORS' RESPONSE TO MOTION FOR REMAND

Defendants InfoW, LLC (f/k/a Infowars, LLC), IWHealth, LLC (f/k/a Infowars Health, LLC), and Prison Planet TV, LLC (the "Debtors"), respond to the *Motion for Remand* [Adv. Dkt. No. 6] filed by the Plaintiffs in the above-captioned adversary proceeding (the "Plaintiffs") as follows:

### Preliminary Statement

1. The Plaintiffs do not dispute that there was federal subject matter jurisdiction at the time of removal or assert that mandatory abstention applies. Instead, they request permissive abstention and equitable remand based on a misleading description of the Debtors' bankruptcy

cases (the "<u>Bankruptcy Cases</u>") and the purposes of the removal. The Plaintiffs have the burden of proof on permissive abstention and will fail to meet that burden.

2.      Much of the Plaintiffs' argument is that the filing of the Bankruptcy Cases—and by extension the removal of the state court lawsuits (the "<u>Removed Litigation</u>")—were done for an improper purpose under the direction of Alex Jones. In reality, the Debtors are controlled by an independent estate fiduciary and the equity interests of the Debtors have been assigned to a litigation settlement trust for the benefit of the Plaintiffs and other claimants. The independent fiduciary and the Debtors' restructuring professionals have negotiated for funds totaling approximately $10.0 million be made available to resolve and satisfy claims against the Debtors as well as pay in whole or in part the joint liability of the parties providing the funding.[1] Even though the Plaintiffs have submitted these arguments to the U.S. Bankruptcy Court for the Southern District of Texas (the "<u>Home Court</u>") in their Motion Dismiss, and a hearing has been set on that matter, they invite this Court to preempt the Home Court's decision without the benefit of the entire Bankruptcy Case to inform the decision.[2]

3.      Further, the Plaintiffs assert that their claims against the Debtors are personal injury torts that fall under 28 U.S. Code § 157(b)(5). While there is contradicting caselaw on that issue, their is consistent with the precedent in the District of Connecticut. Section 157(b)(5) provides that personal injury tort claims must be "tried in the district court in which the bankruptcy case is pending, or in the district court in which the claim arose, as determined by the district court in which the bankruptcy case is pending."

---

[1] For all of the Plaintiffs' fury, the Debtors do not and never have proposed third-party releases for Alex Jones, his companies, or any other person. Non-consensual third-party releases are strictly prohibited in the Fifth Circuit.

[2] The Home Court has set a hearing on the Motion to Dismiss for May 27, 2022, and indicated that a ruling will issue quickly after the hearing.

4.      Because of section 157(b)(5), the Debtors intend to file a motion to transfer venue (the "Motion to Transfer") of the Removed Litigation to the Southern District of Texas if the Home Court denies the Motion to Dismiss.[3] The Home Court is in the best position to determine equitable remand and permissive abstention and will have much of the relevant evidence already before it. And while the Debtors do not oppose trial of the Removed Litigation in the U.S. District Court for the District of Connecticut, that decision must be made by the U.S. District Court for the Southern District of Texas.[4]

5.      Any decision on the Motion for Remand should be held until after the Home Court rules on the Motion to Dismiss. The Debtors would not dispute remand of the Removed Litigation if the Bankruptcy Cases were dismissed. And if the Bankruptcy Cases are not dismissed, the Court should consider the Motion for Remand in light of the Motion to Transfer.

6.      To the extent that this Court considers the merits of the Motion for Remand, it should be denied. The Plaintiffs' arguments consist of conclusory statements that will not be borne out by the facts or raise issues that will be addressed by transfer to the Southern District of Texas. The Removed Litigation is well within the jurisdiction conferred by 28 U.S.C. § 1334 and central to the Bankruptcy Cases and the Debtors' estates.

---

[3] The Debtors have not filed their anticipated Motion to Transfer because the Plaintiffs say that they no longer wish to assert claims against the Debtors. If the Plaintiffs properly effectuate that, the Debtors do not oppose remand. To date, however, the Plaintiffs have filed only a seemingly procedurally improper notice of dismissal that is expressly *without prejudice*. The Debtors take the Plaintiffs at their word and have refrained from imposing additional burden on the Plaintiffs or the Court while attempting to resolve this deficiency.

[4] A complicating factor is that there are also two pending lawsuits against the Debtors that were brought under Texas law with substantially the same facts at issue as the Removed Litigation. Although the Debtors think Connecticut might be a more convenient forum for the Texas plaintiffs (who all reside on the East Coast), a trial in the Southern District of Texas may be necessary to liquidate the claims from the lawsuits in a single forum.

7.     The Plaintiffs' best argument is one that is unfortunately not true. The Plaintiffs claim that the Removed Litigation should be remanded because the Plaintiffs are no longer creditors of the Debtors. But the Notice of Dismissal (defined below) is expressly *without prejudice*. Further, the Plaintiffs have purported to dismiss their claims against the Debtor by notice after *thousands* of filings in state court and a determination of liability. Among these filings was a Notice of Defense, contesting factual allegations, and asserting affirmative defenses that would appear to meet the requirements of an answer under Rule 8 of the Federal Rules of Civil Procedure.

8.     The Debtors would not oppose the Motion for Remand if an order—either from this Court or the Home Court—appropriately reflected that the Plaintiffs' claims against the Debtors are released or dismissed with prejudice. The Debtors have attempted to engage the Plaintiffs to remedy this issue and give the Plaintiffs what they say that want. Until that happens, however, the Plaintiffs are creditors, the Removed Litigation is central to the Debtors' Bankruptcy Cases, and this Court should not remand or abstain. The Plaintiffs cannot have their cake and eat it too.

## Background

### A. Bankruptcy Cases

9.     On April 18, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for chapter 11 bankruptcy relief in the U.S. Bankruptcy Court for the Southern District of Texas, Victoria Division (the "Home Court"), initiating Case No. 22-60020, 22-60021, and 22-60022 in that court.  Copies of the voluntary petitions are attached hereto as Exhibit 1, Exhibit 2, and Exhibit 3. The Debtors' chapter 11 cases are jointly administered under Case No. 22-0020.

10.     Despite the Plaintiffs' imagination, the Debtors are not controlled by Alex Jones or any other entity that Jones controls. Prior to the Petition Date, Alex Jones assigned his membership interests in the Debtors to the 2022 Litigation Settlement Trust (the "Litigation Settlement Trust")

and turned over management of the Debtors to the Marc Schwartz, the Debtors' chief restructuring officer (the "CRO"). The CRO and the Debtors' bankruptcy counsel negotiated at arms'-length with attorneys for Jones and Free Speech Systems, LLC to negotiate a deal that would provide approximately $10.0 million to resolve and pay the Plaintiffs as well as other creditors.

11.     On the Petition Date, the Debtors filed an emergency motion requesting authority to appoint former bankruptcy judges Russell F. Nelms and Richard S. Schmidt as trustees (upon such appointment, the "Trustees") of the Litigation Settlement Trust that owns the equity interests of the Debtors [Bankr. Dkt. No. 6] (the "Trustee Motion") and an application to employ the CRO in the Bankruptcy Cases [Bankr. Dkt. No. 7] (the "CRO Application").[5] Copies of the Trustee Motion and CRO Application are attached respectively as Exhibit 4 and Exhibit 5 hereto.

12.     The Home Court held preliminary hearings on the Trustee Motion and CRO Application on April 22 and April 29, 2022. The Debtors agreed to continue the hearing on the merits at the request of creditors. A hearing on the merits is set for June 3, 2022, after hearings on motions to dismiss the Bankruptcy Cases.[6]

13.     There are three motions to dismiss pending in the Bankruptcy Cases. The Plaintiffs filed their motion on April 26, 2022 [Bankr. Dkt. No. 36] (the "Motion to Dismiss").  A group of plaintiffs in Texas litigation—who had won the race to the courthouse and were scheduled to begin three successive trials beginning in April 2022—filed their motion to dismiss on April 27. 2022.

---

[5] The Litigation Settlement Trust was initially funded in the amount of $725,000 by the proceeds of the sale of Alex Jones's exempt Texas homestead. The funds were and will be used to fund the Bankruptcy Cases.

[6] Although the appointment of the proposed Trustees would have erased the any vestiges of Alex Jones's management of the Debtors—i.e., the initial trustee of the Litigation Settlement Trust who has no authority to act for the Debtors but was appointed by Jones—the Plaintiffs asserted that the Trustee Motion and CRO Application should not be heard until after the motions to dismiss. The Debtors did not oppose the Plaintiffs' request.

[Bankr. Dkt. No. 42]. The U.S. Trustee for Region 7 filed a motion to dismiss on April 29, 2022. [Bankr. Dkt. No. 50]. The Home Court set a hearing on all three motions to dismiss on May 27, 2022.

### B. Plan Support Agreement

14.     The purpose of the Bankruptcy Cases are to provide a mechanism to efficiently determine and pay in full *all* claims against the Debtors and joint-tortfeasors. To effectuate this, the equity of the Debtors was assigned to the Liquidation Settlement Trust (for the benefit of the Plaintiffs and other litigation claimants) prior to the Petition Date, and the Debtors, with separate counsel and financial advisors, negotiated a Plan Support Agreement obligating Alex Jones and Free Speech Systems, LLC ("FSS," and together with Jones, the "Third-Party Funding Contributors") to provide funds to pay claims. Importantly, there are no third-party releases contemplated or even on the table. Non-consensual third-party releases are prohibited in the Fifth Circuit.

15.     While they were not willing to serve absent approval of the Home Court, the proposed Trustees have negotiated further changes to the Plan Support Agreement. A copy of the original Plan Support Agreement is attached hereto as Exhibit 6. A redline showing the extensive changes negotiated among the Debtors, the Trustees, and the Third-Party Funding Contributors is attached hereto as Exhibit 7. A copy of the Amended and Restated Plan Support Agreement (the "PSA") is attached hereto as Exhibit 8.[7]

16.     Among other things, the PSA obligates the Third-Party Funding Contributors to fund $7.0 million to pay litigation claimants. This is in addition to (a) the approximately $2.0

---

[7] The proposed Trustees also negotiated significant changes to the Declaration of Trust for the Litigation Settlement Trust.

million of revenue that will be derived from IWH's royalty rights over a five (5) year period, (b) $725,000 that was funded to the Litigation Settlement Trust from proceeds of Jones' exempt homestead prior to the Petition Date,[8] and (c) the Third-Party Funding Contributors' ongoing obligation to pay the costs of administration of the Bankruptcy Cases. The total consideration will be approximately $10.0 million—*i.e.*, $500,000 per litigation claimant. Upon appointment, the Debtors anticipate the Trustees will have leverage to obtain additional consideration from the Third-Party Funding Contributors.

17.     A critical aspect of the PSA and the feasibility of any resulting plan is that the lawsuits in which joint liability has been asserted against the Debtors and the Third-Party Funding Contributors are liquidated in a central forum. Prior to the Petition Date, the Debtors' and the Third-Party Funding Contributors incurred and paid more than $10.0 million in legal expenses. The savings from liquidating the claims in a central forum are essential to the administration of the Debtors' bankruptcy estates and ultimately paying creditors in full. Absent centralized administration—which may include determination by a jury—the funds available will be cannibalized in successive trials over a five-month period.[9]

### C.  Removed Litigation

18.     The Removed Litigation consists of claims asserted by the Plaintiffs jointly against the Debtors, the Third-Party Funding Contributors, and other parties under theories of false light, negligent and intentional infliction of emotion distress, violation of the Connecticut Unfair Trade

---

[8] There is no cap on the value of an exempt homestead under Texas law.
[9] The Plaintiffs were the last in the series of jury trials set to continue from April to October 2022. The plaintiffs in the Texas litigation—who had also already established liability—would likely have already executed on their judgments by the time the Plaintiffs here were going to trial.

Practices Act, and defamation. The Plaintiffs assert that their claims are "personal injury tort claims." (Motion for Remand p.13 n.10).

19.    Liability has been established against the Debtors and the Third-Party Funding Contributors by the Connecticut Superior Court. All that remains is to liquidate the amount of the damages.

**D. Purported Dismissal**

20.    On May 2, 2022, the Plaintiffs filed their *Notice of Dismissal of Claims Against Removing Defendants Infowars LLC (aka InfoW, LLC), Infowars Health, LLC (aka IWHealth LLC) and Prison Planet TV, LLC* [Adv. Dkt. No. 16] (the "Notice of Dismissal").

21.    The Plaintiffs assert that they are "no longer creditors in the Texas bankruptcy" in their *Supplemental Filing in Support of Motion for Order Shortening Notice Period and Scheduling Expedited Hearing on Plaintiffs' Motion for Remand* [Adv. Dkt. No. 18] (the "Supplemental Filing"). The Plaintiffs make similar claims in their *Expedited Request for Status Conference* [Bankr. Dkt. No. 85] (the "Status Conference Request"), a copy of which is attached hereto as Exhibit 9.

22.    The Plaintiffs' representations do not square with (a) what the Notice of Dismissal actually says and (b) the requirements of Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure. The Notice of Dismissal purports to be *without prejudice*. And among the myriad filings in the Removed Litigation was the Notice of Defenses attached as Exhibit 10 hereto that denies allegations and asserts affirmative defenses. That appears to meet the requirements of an answer under Rule 8 of the Federal Rules of Civil Procedure and would therefore preclude voluntary dismissal by notice.

23.    The Debtors have attempted to resolve these issues with the Plaintiffs to no avail as of the date of this Response. It appears that the Plaintiffs would rather incur expenses to brief

issues and have hearings instead of entering a simple stipulation giving them what they say they want.

**Argument**

**A. As of the Date of this Filing, the Plaintiffs Remain Creditors and the Notice of Dismissal May Be Ineffective.**

24.     First things first: There would be no dispute about remand if the Plaintiffs no longer had claims against the Debtors. The problem is that the effectiveness of the Notice of Dismissal is arguably ineffective and expressly states that the dismissal was without prejudice.[10]

25.     Rule 41(a)(1) of the Federal Rules of Civil Procedure provides that an action can be voluntarily dismissed without court order only "by filing: (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or (ii) a stipulation of dismissal signed by all parties who have appeared." Otherwise, an order is required.

26.     The problem here is that the Debtors filed and served the Notice of Defenses that certainly *looks* like an answer. Rule 8(b) requires of responsive pleading just a statement of defenses and admissions and denials of the allegations asserted against it. And Rule 8(e) requires pleadings to be construed so as to do justice.

27.     But even if the Notice of Dismissal was effective, it would not have eliminated the Plaintiffs' claims against the Debtors such that the Plaintiffs were no longer creditors in the Bankruptcy Cases. The entire *point* of a dismissal without prejudice is that it does not adjudicate the underlying claims.

---

[10] The Plaintiffs do not even assert that they are no longer creditors in motions seeking affirmative relief that will result in an order. If the Debtors had to later argue judicial estoppel, they would need to point to (a) vague statements about no longer being creditors in the Bankruptcy Cases (b) that were made in the context of a request to expedite before this Court and a motion for status hearing in the Home Court.

28.     The Debtors' concern is that the Plaintiffs change their minds and later assert that they still have valid claims. At that point, with the PSA busted, that the Debtors will lack the ability to pay the claims in full. If that is not what the Plaintiffs are planning, then the matter should be resolved before any hearing on the Motion for Remand. Absent such resolution—which, again, is what the Plaintiffs say they want—the Notice of Dismissal should be disregarded as a procedurally improper nullity.

**B.   There is No Dispute that the Court had Jurisdiction Over the Removed Litigation at the Time of Removal and that Mandatory Abstention Does Not Apply.**

29.     The Plaintiffs do not present any argument that this Court did not have jurisdiction over the Removed Litigation at the time of removal or that mandatory abstention applies.[11]

   i.   *The Court has jurisdiction under 28 U.S.C. § 1334(b).*

30.     United States district courts have original jurisdiction of "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). The district courts "may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157. Bankruptcy Local Rule 9027-1 requires that "[a] removed claim or cause of action related to a bankruptcy case shall be filed in the Bankruptcy Court as an adversary proceeding and assigned directly to a Bankruptcy Judge."

31.     "[A] civil proceeding is 'related to' a title 11 case if the action's 'outcome might have any "conceivable effect" on the bankruptcy estate." *Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011). There is "related to" jurisdiction "if the outcome could

---

[11] In the Supplemental Filing, the Plaintiffs assert that the Notice of Dismissal divested the Court of jurisdiction and the notice period should therefore be shortened. This assumes that the Notice of Dismissal was proper and ignores that jurisdiction is determined at the time such jurisdiction is invoked.

alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and in any way impacts upon the handling and administration of the bankrupt estate." *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 317 (S.D.N.Y. 2003) (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995)).

32.     There should be no dispute that claims asserted jointly against the Debtors and the Third-Party Funding Contributors, from whom the Debtors have negotiated payments of $7.0 million to go to creditors of the Debtors' estates, are "related to" the Debtors' estates and the Bankruptcy Cases. And as the Plaintiffs have not purported to dismiss their claims against the Debtors with prejudice, they remain at least potential creditors until the claims bar date.

33.     Moreover, jurisdiction is determined at the time a case is removed. As the Supreme Court has instructed in the context of diversity jurisdiction, "[i]t has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of action brought." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004). Courts in the Second Circuit have applied this analysis to evaluate jurisdiction under section 1334. *KeyBank Nat'l Ass'n v. Franklin Advisers, Inc.*, 600 B.R. 214, 224 (S.D.N.Y. 2019) ("Relevant here, 'subject matter jurisdiction is assessed as of the commencement of an action,' or in other words, at the time these cases were removed."); *In re New 118th LLC*, 396 B.R. 885, 890 (Bankr. S.D.N.Y. 2008) ("Subject matter jurisdiction over a removed claim is determined by the facts existing at the time of removal."); *In re New York Skyline, Inc.*, 471 B.R. 69, 78 (Bankr. S.D.N.Y. 2012) ("A court's subject matter jurisdiction is determined at the time that the action is commenced, and subsequent events do not affect it."). The Notice of Dismissal—even if it was proper and with prejudice—does not divest the Court of jurisdiction.

        ii.     *Mandatory abstention does not apply because the Plaintiffs assert the claims against the Debtors are personal injury claims under 28 U.S.C. § 157(b)(5).*

34.     Mandatory abstention does not apply to the Removed Litigation. In footnote 10 of the Motion for Remand, the Plaintiffs assert that the claims against the debtors are personal injury torts under 28 U.S.C. § 157(b)(5). According to 28 U.S.C. § 157(b)(4), "[n]on-core proceedings under section 157(b)(2)(B) of title 28, United States Code, shall not be subject to the mandatory abstention provisions of section 1334(c)(2)."

**C. The Court Should Await the Resolution of the Motion to Dismiss Prior to Ruling on the Motion for Remand.**

35.     The Plaintiffs asserted at the April 29 status conference before the Home Court that dismissal of the Bankruptcy Cases should be decided before the Plaintiffs be required to expend funds litigating on other issues.[12] The Debtors acquiesced to their request based on the Plaintiffs' representations of the burdens they face from unnecessary litigation.

36.     Under the same reasoning, the Motion for Remand should await a ruling on the Motion to Dismiss. If the Bankruptcy Cases are dismissed, the case should of course be remanded, regardless of the merits and no additional funds need be expended by either the Plaintiffs or the Debtors.

**D. The Motion for Remand Should be Determined by the Appropriate Court in the Southern District of Texas.**

37.     The Plaintiffs assert that their claims against the Debtors—which have not been dismissed with prejudice or formally released—are personal injury tort claims for the purposes of 28 U.S.C. § 157(b)(5). The Plaintiffs' position is consistent with *In re Ice Cream Liquidation, Inc.*, 281 B.R. 154 (Bankr. D. Conn. 2002), for at least some of the claims.

---

[12] The other issues that the Plaintiffs would apparently bear the burden of litigating involve the appointment of independent fiduciaries over the Debtors and their estates. How opposing this relief benefits the Plaintiffs is hard to fathom.

38.     Under section 157(b)(5), provides that the U.S. District Court for the Southern District of Texas is the correct court to decide where personal injury claims will be tried. The statute provides:

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

39.     Even if this Court is inclined to abstain, it should not remand the Removed Litigation until the U.S. District Court for the Southern District of Texas decides the proper court to try the still-existing section 157(b)(5) claims. *See In re Ice Cream Liquidation, Inc.*, 281 B.R. at 169 (Ruling that "nothing in this order shall prejudice or otherwise impair any right of the Debtor to seek transfer all or any part of the Litigation pursuant to a Section 157(b)(5) Motion filed with the Connecticut District Court."). As the Second Circuit Court of Appeals has instructed, transfer to the district in which the bankruptcy case is pending "should be the rule, abstention the exception." *In re Pan Am. Corp.*, 950 F.2d 839, 845 (2d Cir. 1991).

40.     Additionally, the Home Court is in the best position to determine key issues related to equitable remand and permissive abstention. Whether the remand will result in more efficient bankruptcy administration and the remoteness of the Removed Litigation from the Bankruptcy Cases require evaluating the totality of the Bankruptcy Cases. The effect on efficient administration is among the most important factors. *See e.g.*, *In re Adelphia Commc'ns Corp.*, 285 B.R. 127, 144, 146-47 (Bankr. S.D.N.Y. 2002). The court best able to make these determinations should decide.

41.     Because of this, the Debtors intend to file a Motion to Transfer Venue if the Plaintiffs prove unwilling to properly release or dismiss their claims with prejudice. The courts in the Southern District of Texas are in the best position to rule on the Motion for Remand.

**E.  The Motion for Remand Should be Denied if this Court Decides to Rule on the Merits.**

42.    Equitable remand and permissive abstention should be used sparingly. *E.g.*, *CityView Towne Crossing Shopping Ctr. Fort Worth Tx. Ltd. P'ship v. Aissa Med. Res. L.P.*, 474 F. Supp. 3d 586, 600 (W.D.N.Y. 2020); *Little Rest Twelve, Inc. v. Visan*, 458 B.R. 44, 61 (S.D.N.Y. 2011). And as the Second Circuit Court of Appeals has instructed, courts should generally transfer litigation involving section 157(b)(5) to the district court in which the bankruptcy case is pending with abstention as the exception. *In re Pan Am. Corp.*, 950 F.2d at 845. Remand and abstention should be denied here.

43.    Courts in the District of Connecticut typically look to seven (7) factors in deciding whether to equitably remand or permissively abstain. *E.g.*, *Breakell v. 3M Co.*, No. 3:19-CV-583 (VAB), 2019 WL 3162490, at *4 (D. Conn. July 16, 2019). It is the burden of the party moving for remand or abstention to establish that the court should abstain or remand. *See, e.g.*, *KeyBank Nat'l Ass'n v. Franklin Advisers, Inc.*, 600 B.R. 214, 233 (S.D.N.Y. 2019) ("Plaintiffs have failed to satisfy their burden to establish that either permissive abstention or an equitable remand is appropriate here."); *Marah Wood Prods., LLC v. Jones*, 534 B.R. 465, 473 (D. Conn. 2015) ("[T]he party moving for remand must convince the district court to exercise 'permissive abstention' and remand the case upon 'any equitable ground.'"). Taken together, these factors weigh *against* remand and abstention.

> i.    *The effect on the efficient administration of the bankruptcy estate*

44.    The Plaintiffs assert that remand would "not negatively affect the efficient administration of the bankruptcy estate." They argue that there are no bankruptcy issues to be decided, the state court would be more efficient at addressing the relevant Connecticut law, and the Court would need to disrupt its docket to adjudicate a complex state-law trial.

45.     The Motion for Remand undercuts the Plaintiffs own arguments on this factor. They assert that 28 U.S.C. § 157(b)(5) applies to their claims against the Debtors (Motion for Remand p.13 n.10), which is clearly a bankruptcy issue. Indeed, section 157(b)(5) *requires* that the Southern District of Texas decide where such claims are tried. And liability of the Debtors and the Third-Party Funding Contributors has already been established (Motion for Remand p.6) and all that remains is to determine the amount of damages with respect to those parties. There are no complex issues of state law. The Plaintiffs conclusory statements are not sufficient to meet their burden to establish that equitable remand or permissive abstention are appropriate.

46.     More to the point, efficient administration of the Debtors' estates would be best served by denying remand. The cost savings achieved through the centralized liquidation of damages is a critical and necessary element of the PSA, which provides the means to pay all claims against the Debtors in full through a plan. The PSA is property of the Debtors' bankruptcy estates and central to the overall administration of those estates.

47.     And while there are other lawsuits initiated in Texas, the Removed Litigation comprises the majority of the litigation claims against the Debtors. This is not a situation where the Removed Litigation alone would have no significant impact on the Bankruptcy Cases. *Cf. Breakell*, 2019 WL 3162490, at *6 (finding that the factor was neutral in Johnson & Johnson's removal of an action related to the Imerys bankruptcy case because the lawsuit, by itself, would not have a significant impact on the bankruptcy estate or proceedings).

48.     This factor weighs *against* remand or abstention. The Removed Litigation is central to the Debtors' estates and the Bankruptcy Cases.

    ii.    <u>*The extent to which issues of state law predominate*</u>

49.     While the liquidation of damages against the Debtors and the Third-Party Funding Contributors is ultimately *for* state law claims, that liability has already been established.

15

Determining the amount of damages to liquidate a claim is something bankruptcy courts and federal district courts are well equipped to handle. The claims allowance process in bankruptcy would be impossible if establishing the amount of a claim under state law were sufficient grounds for permissive abstention. This factor weighs only slightly in favor of equitable remand or permissive abstention. *See, e.g.*, *CAMOFI Master LDC v. U.S. Coal Corp.*, 527 B.R. 138, 145 (Bankr. S.D.N.Y. 2015) (finding this factor to be a "modest factor" because bankruptcy courts regularly address state law matters).

### iii.   *The difficulty or unsettled nature of the applicable state law*

50.    The Plaintiffs make no argument about how the determination of damages with respect to the Debtors and the Third-Party Funding Contributors will involve complex issues of state law. Their assertion is that the fifteen (15) plaintiffs will testify regarding their emotional distress and the evidence presented will involve broadcasts over the world wide web. They do not claim that Connecticut law is unsettled on the topic of damages or that Connecticut courts have superior knowledge and experience dealing with web broadcasts than federal courts.[13] This factor is neutral.

### iv.   *Comity*

51.    Comity is also neutral. Comity exists between both the Connecticut Superior Court *and* the courts of the Southern District of Texas, negating this factor. *See Breakell*, 2019 WL 3162490, at *6. The U.S. District Court for the Southern District of Texas is the court that should determine where the Plaintiffs' asserted personal injury claims should be adjudicated under 28 U.S.C. § 157(b)(5). And the U.S. Bankruptcy Court for the Southern District of Texas is the court

---

[13] If anything, the interstate nature of the Internet and the Federal Communications Commission's regulation of electronic communication in the United States involves federal interests making determination by a federal court especially appropriate.

in which the Bankruptcy Cases are pending and is in the best position to determine the importance

of the Removed Litigation to the Debtors' estates. There is no valid reason to favor the comity

with the Connecticut Superior Court over the comity with the courts of the Southern District of

Texas.

     *v.*    *The degree of relatedness or remoteness of the proceeding to the main bankruptcy case*

52.    This factor weighs against remand or abstention. As described above, the Removed

Litigation is central to the Debtors' estates and the Bankruptcy Cases. The Debtors, under the

management of their independent CRO, have negotiated a deal that they submit will provide for

the payment of the Plaintiffs claims in full.[14] Liquidating the claims in a central forum is necessary

to make that happen.

53.    The Plaintiffs cite *Breakell* in support of their position that the Removed Litigation

is remote from the Bankruptcy Cases. However, that case involved removal by a non-debtor—

Johnson & Johnson—that had the obligation to indemnify the relevant debtor and the U.S. District

Court for the District of Connecticut held that the factor was *neutral*. *See Breakell*, 2019 WL

3162490, at *6. How the Plaintiffs take that authority as support of the factor being "strongly in

favor of remand" is a mystery.

     *vi.*    *The existence of the right to a jury trial*

54.    As reflected in *Breakell*, the Plaintiffs' right to a jury trial is also neutral. There is

no reason to suspect that the U.S. District Court for the Southern District of Texas would refuse

the Plaintiffs' right to a jury trial. *See id.* ("The sixth factor, the existence of a right to jury trial, is

---

[14] Even if the funds provided for in the PSA—and any additional amounts the Debtors are able to negotiate upon the appointment of the Trustees—do not pay claimants in full, it will pay them significantly more than would be otherwise possible and the Plaintiffs would still have their claims against the Third-Party Funding Contributors to the extent not satisfied.

neutral because a federal court would likely honor Mr. Breakell's right to a jury trial.") (citing *Madar v. Johnson & Johnson*, No. 619CV0493GTSTWD, 2019 WL 2723463, at *9 (N.D.N.Y. July 1, 2019)).

> vii.    *The prejudice to the involuntarily removed defendants*

55.    The Plaintiffs cite to *Breakell* again in support of the proposition that this factor strongly weighs in favor of remand. While *Breakell* does support the Plaintiff's contention that the Court should consider prejudice to involuntarily removed plaintiffs in addition to defendants, it is also clear from the District Court's analysis that the factor requires *balancing* the prejudice to involuntarily removed parties with prejudice to the removing party from remand. *See id.* at *7 (analyzing the prejudice to the removing party in connection with this factor).

56.    Here, remand would destroy the Debtors' ability to pay the claims against them— including seemingly still-existing the claims of the Plaintiffs—in full. Doing so requires liquidating liability in a central forum and achieving the attendant savings. Absent the value obtained from the PSA, the Debtors earn revenue of only approximately $38,000 per month that would be available to creditors.

57.    It is ultimately the Plaintiffs' burden to establish that the prejudice to them caused by removal exceeds the prejudice to the Debtors that would result from remand. The Plaintiffs cannot meet this burden and this factor is neutral or weighs against remand or abstention.

> viii.    *Other factors*

58.    The Debtors do not dispute that the Court may consider additional factors. But the factors that the Plaintiffs point to do not favor abstention or remand. Further, the existence of diversity between the Plaintiffs and the Defendants and the Plaintiffs' attempts to take positions in the Bankruptcy Cases inconsistent with their positions in the Removed Litigation and the Bankruptcy Cases cut *against* remand and abstention.

59.     The Plaintiffs first point to the fact that the Debtors were formerly related to Alex Jones but Jones and FSS have not filed for chapter 11 relief. The Plaintiffs claim that "[a]ccording to the information the Jones defendants have produced in discovery, the shell company debtors – Infowars, LLC; Prison Planet TV, LLC; and Infowars Health, LLC – have no employees, no business purpose, and little-to-no assets." (Motion for Remand p. 15). The Plaintiffs argue that this is an abuse of the bankruptcy process. (Motion for Remand p.15-16).

60.     This is essentially the same argument that the Plaintiffs have made in their Motion to Dismiss and is set to be determined by the Home Court on May 27, 2022. The Home Court is the proper forum to decide this issue. This Court should decline to preempt the decision of the Home Court or require the parties to litigate the issue in two forums.

61.     Moreover, the Plaintiffs' assertions in the Motion for Remand and the Motion to Dismiss contradict their assertions in the Removed Litigation and especially in their requests for sanctions that ultimately established liability. The Plaintiffs asserted in the Removed Litigation that the Debtors were liable to them and argued for—and obtained from the Connecticut Superior Court—default sanctions for discovery abuses. The Plaintiffs now claim here and in the Home Court that the Debtors have nothing to reorganize and engage in no business. If that is the case, how could the Debtors have possibly done anything to create liability or damage the Plaintiffs? And what information could the Debtors have failed to produce that would have justified death penalty sanctions? It is one or the other. But since there are different courts involved, nothing has stopped the Plaintiffs—in fairness, their counsel—from changing their story now that it suits them. The Plaintiffs' inconsistent positions warrant consideration in the forum best suited to evaluate all of the facts and avoid inconsistent rulings. That is the Home Court (after transfer and reference from the District Court for determination of preliminary matters).

62.    The Plaintiffs also point to the undisputed fact that the Removed Litigation is a "non-core" proceeding. (Motion for Remand p.16). However, the statutory scheme and legislative history indicate that Congress intended for personal injury claims against the Debtors to be determined by federal courts. *See In re Pan Am. Corp.*, 950 F.2d at 844–45 (reasoning that "the language of section 157(b)(5) appears to be mandatory" and that "the district court, if it elects to abstain and have the claim liquidated in state court, may be contravening the legislative history."). And while *removal* under 28 U.S.C. § 1441—as opposed to 28 U.S.C. § 1452—may be untimely, diversity jurisdiction under 28 U.S.C. § 1332 exists with respect to the Removed Litigation. The Removed Litigation is squarely within the universe of cases over which Congress intended federal courts to exercise jurisdiction.

**F.  Awarding Attorneys' Fees and Costs is Inappropriate Here.**

63.    Although attorneys' fees and costs may be awarded on remand under 28 U.S.C. § 1447(c), that statute only provides for remand based upon a "defect." There is no defect in the removal here.

64.    The Plaintiffs do not assert that removal was improper under applicable law. Nor do they argue that subject matter jurisdiction was lacking at the time of removal or that mandatory abstention applies. Rather, they ask the Court to permissively abstain where the factors are fairly in dispute and the language of 28 U.S.C. § 157(b) seems to *require* determination of where the claims will be tried by the U.S. District Court for the Southern District of Texas.

65.    Further, even if section 1447(c) did apply, requests for fees should be denied when an objectively reasonable basis for removal exists absent unusual circumstances related to the purposes of awarding fees under 28 U.S.C. § 1447(c). *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). The statute is not meant to deter valid removals. *See id.* at 140 ("[T]here is no

reason to suppose Congress meant to confer a right to remove, while at the same time discouraging its exercise in all but obvious cases.").

66.     At the end of the day, the Plaintiffs chose to assert claims against the Debtors and continue to pursue those claims for four years even though they now claim the Debtors are nothing but "shell companies."[15] Absent dismissal of the claims with prejudice or release from the Plaintiffs, the Debtors are unable to satisfy these claims without chapter 11 relief, obtaining funding from the Third-Party Funding Contributors, and consolidating the litigation in a single forum. Even if the Court decides to equitably remand or abstain, the removal was appropriate to enable the Debtors to pay their claims.

## Conclusion

67.     If the Plaintiffs are telling the truth and are willing to take steps to release or properly dismiss their claims against the Debtors with prejudice so they are no longer creditors, the Debtors will withdraw their opposition to remand. The Debtors can live with the Plaintiffs' choice to inflict maximum pain on Alex Jones rather than maximizing their potential recovery with $500,000 dedicated per Plaintiff (plus retaining their rights to against Jones and FSS for any award exceeding that amount). But unless and until the Plaintiffs follow through, the Removed Litigation remains critical to the Debtors' estates and Bankruptcy Cases and should not be remanded.

*[Remainder of Page Intentionally Left Blank]*

---

[15] The Debtors hold and license intellectual property rights and receive certain royalty payments.

Date: May 12, 2022                          Respectfully Submitted,


                                            **DEFENDANTS AND DEBTORS, INFOW, LLC**
                                            **IWHEALTH, LLC PRISON PLANET, LLC**


                                            By: /s/ Cameron L. Atkinson /s/
                                            Cameron L. Atkinson[16]
                                            PATTIS & SMITH, LLC
                                            383 Orange Street
                                            New Haven, CT 06511
                                            V: 203-393-3017
                                            F: 203-393-9745
                                            catkinson@pattisandsmith.com

                                            -and-

                                            R. J. Shannon (*pro hac vice* pending)
                                            PARKINS LEE & RUBIO LLP
                                            700 Milam Street STE 1300
                                            Houston, TX 77002
                                            Tel.: 713-715-1664
                                            Fax: 713-715-1699
                                            Email: rshannon@parkinslee.com

---

[16] On May 9, 2022, Attorney Atkinson filed a motion to withdraw his and his colleagues' appearances pursuant to Connecticut Rule of Professional Conduct 1.16(a)(3). The Court has not yet ruled on that motion, and the Defendants have not finalized the securing of successor counsel yet. Pursuant to Connecticut Rule of Professional Conduct 1.16(d), Attorney Atkinson has filed this pleading to protect the Defendants' interests with the consent of their duly authorized representatives. His filing of the pleading, however, does not indicate or otherwise imply that his prior motion to withdraw does not reflect the current attorney-client relationship. He and his colleagues will continue to seek permission to withdraw.

## <u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the date of filing, a true and correct copy of the foregoing document was served by U.S.P.S. and, where indicated, email on the following parties:

Attn: Eric Goldstein, Jessica M. Signor
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06013
egoldstein@goodwin.com
jsignor@goodwin.com

Attn: Alinor C. Sterlin, Christopher Mattei,
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604
asterling@koskoff.com
cmattei@koskoff.com
mblumenthal@koskoff.com

Attn: Kyung Lee, R. J. Shannon
Parkins Lee & Rubio LLP
700 Milam Street STE 1300
klee@parkinslee.com
rjshannon@parkinslee.com

Attn: Eric Henzy
Zeisler & Zeisler P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604
ehenzy@zeislaw.com

Midas Resources, Inc.
Attn. Officer, Managing Agent or Agent for
Service
190 Cobblestone Lane
Burnsville, MN 55337

Attn: Mario Kenneth Cerame
Brignole & Bush LLC
73 Wasworth Street
Hartford, CT 06106

Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401
sjordan@jhwclaw.com

Attn: Ray Bataglia
Law Office of Ray Battaglia, PLLC
66 Granburg Circle
San Antonio, TX
rbattaglialaw@outlook.com

Wolfgang Halbig
25526 Hawks Run Lane
Sorrento, FL 32776

Cory T. Sklanka
515 Gracey Avenue
Meriden, CT 06451

Genesis Communications Network, Inc.
Attn. Officer, Managing Agent or Agent for
Service
190 Cobblestone Lane
Burnsville, MN 55337

*/s/Cameron L. Atkinson*
Cameron L Atkinson